# Exhibit I

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE GRAB HOLDINGS LIMITED SECURITIES LITIGATION | Case No. 1:22-cv-02189-JLR |

**STIPULATION AND AGREEMENT OF SETTLEMENT**

This Stipulation and Agreement of Settlement (the "Stipulation") is made and entered into by and between the Court-appointed Lead Plaintiffs Si Fan ("Fan"), Amit Batra ("Batra"), and SLG Cloudbank Holdings, LLC, ("SLG," and together with Fan and Batra, "Lead Plaintiffs"), on behalf of themselves and all other members of the Settlement Class (defined below), and Defendants Brad Gerstner ("Gerstner"), Hab Siam ("Siam"), Richard N. Barton ("Barton"), Aishetu Fatima Dozie ("Dozie"), Dev Ittycheria ("Ittycheria"), Anthony Tan ("Tan"), Peter Oey ("Oey"), Tan Hooi Ling ("Ling"), John Rogers ("Rogers"), Dara Khosrowshahi ("Khosrowshahi"), Ng Shin Ein ("Ein"), and Oliver Jay ("Jay" and, collectively with Gerstner, Siam, Barton, Dozie, Ittycheria, Tan, Oey, Ling, Rogers, Khosrowshahi, Ein and Jay, the "Individual Defendants") and Defendant Grab Holdings Limited ("Grab" or the "Company" and, together with the Individual Defendants, "Defendants") (Lead Plaintiffs and the Defendants are collectively referred to herein as the "Parties"), and embodies the terms and conditions of the settlement of the above-captioned action (the "Action").[1] The Stipulation is intended to fully, finally, and forever resolve, discharge, and settle with prejudice the Released Claims (defined below), subject to the approval of the United States District Court for the Southern District of New York (the "Court"), and the terms and conditions set forth in this Stipulation.

**WHEREAS:**

**I.      THE ACTION**

---

[1] All claims asserted against Maa Ming-Hokng were dismissed from this Action pursuant to the Court's Opinion and Order dated March 12, 2024 (ECF No. 103).

All words or terms used herein that are capitalized shall have the meanings ascribed to those words or terms herein and in §V.1 hereof entitled "Definitions," *infra*.

On March 16, 2022, a purported securities class action was filed in the United States District Court for the Southern District of New York captioned *Vincenzo Peccarino v. Grab Holdings Limited, et al.*, Case No. 1:22-cv-02189 (S.D.N.Y) (the "*Peccarino* Action") on behalf of persons and entities who purchased or otherwise acquired Grab securities between November 12, 2021 and March 3, 2022 inclusive. ECF No. 1 at ¶1.[2] On April 21, 2022, a similar securities class action captioned *Si Fan v. Grab Holdings Limited et al.*, Case No. 1:22-cv-03277 (S.D.N.Y.) (the "*Fan* Action") was also filed in this Court seeking the same relief against the same defendants on behalf of persons and entities that purchased or otherwise acquired Grab securities between August 2, 2021 and March 3, 2022, inclusive. ECF No. 39 at 1.

On June 7, 2022, the Court entered an Order: (i) consolidating the *Peccarino* and *Fan* Actions; (ii) amending the case caption of the consolidated *Peccarino* and *Fan* Actions to *In re Grab Holdings Limited Securities Litigation* and ordering that every subsequent filing be made under Master File No. 1:22-cv-02189; (iii) appointing Fan, Batra, and SLG as Lead Plaintiffs; and (iv) appointing Levi & Korsinsky, LLP and Pomerantz LLP as Co-Lead Counsel. ECF No. 39.

On August 22, 2022, Lead Plaintiffs filed their Amended Class Action Complaint for Violation of Federal Securities Laws (the "Complaint"), alleging five causes of action: (i) violations of Section 11 of the Securities Act of 1933 ("Securities Act"), against all Defendants, on behalf of all persons who purchased or otherwise acquired public shares in Grab (including by way of exchange of publicly-listed Altimeter Growth Corp. ("AGC") shares) pursuant or traceable to the proxy/registration statement that Defendants filed with the United States Securities and Exchange Commission ("SEC") on Form F-4 on August 2, 2021, and that was thereafter amended on Forms F-4/A on September 13, 2021, October 18, 2021, November 12, 2021, November 17, 2021, and November 19, 2021, and the body of which was incorporated into the final prospectus

---

[2] "ECF" herein refers to the electronic court filing docket entries filed in the underlying Action, Case No. 1:22-cv-02189 (S.D.N.Y.).

on Form 424(b)(3) filed on November 19, 2021, as amended, the "Proxy/Registration Statement" (the "Securities Act Class"); (ii) violations of Section 15 of the Securities Act, against Defendants Tan and Oey, on behalf of the Securities Act Class; (iii) violations of Section 14(a) of the Securities Exchange Act of 1934 ("Exchange Act") and SEC Rule 14a-9 promulgated thereunder, against Defendants Grab, Gerstner, Siam, Barton, Dozie, and Ittycheria, on behalf of all persons who were solicited to approve the merger between AGC and Grab and who exchanged publicly-listed AGC shares for Grab Class A Ordinary Shares rather than redeeming the same pursuant to the Proxy/Registration Statement (the "14(a) Class"); (iv) violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder, against Defendants Grab and Tan, on behalf of all persons who purchased or otherwise acquired public Grab Class A Ordinary Shares or other public Grab securities between December 2, 2021 and March 3, 2022, both dates inclusive (the "10(b) Class Period)" for the "10(b) Class"); and (v) violations of Section 20(a) of the Exchange Act, against Defendant Tan, on behalf of the 10(b) Class. ECF No. 58.

On September 26, 2022, the case was reassigned to the Honorable Jennifer L. Rochon. ECF No. 81.

Defendants jointly moved to dismiss the Complaint on November 18, 2022. ECF Nos. 89–91.

On January 27, 2023, Lead Plaintiffs filed a memorandum in opposition to Defendants' joint motion to dismiss the Complaint. ECF No. 92.

On February 27, 2023, Defendants filed a joint reply in further support of their motion to dismiss the Complaint. ECF No. 93.

On March 7, 2024, the Court held oral argument on Defendants' motion to dismiss the Complaint.

On March 12, 2024, the Court issued an opinion and order granting in part and denying in part Defendants' motion to dismiss the Complaint. ECF No. 103.

On April 15, 2024, Lead Plaintiffs served initial document requests and Defendants served responses and objections thereto on May 15, 2024.

On April 23, 2024, the Parties exchanged Rule 26 initial disclosures.

On April 30, 2024, the Parties filed a joint letter and proposed protective order (ECF No. 111), which the Court entered on May 1, 2024. ECF No. 112.

On May 5, 2024, Defendants filed their respective Answers to the Complaint. ECF Nos. 114, 115.

On May 23, 2024, the Parties filed a joint letter requesting the Court enter a proposed civil case management plan and scheduling order (ECF No. 116), which the Court entered on May 24, 2024. ECF No. 117.

On June 12, 2024, Defendants Grab, Tan, Oey, Ling, Rogers, Khosrowshahi, Ein and Jay served their initial document requests and Lead Plaintiffs served responses and objections thereto on July 12, 2024.

On August 5, 2024, Lead Plaintiffs filed an unopposed motion seeking issuance of letters rogatory pursuant to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters Dated March 18, 1970 (the "Hague Convention") to Morgan Stanley Asia (Singapore) Pte., which the Court granted on August 6, 2024. ECF Nos. 118-21. The Court then issued the letter of request on August 7, 2024. ECF No. 122. Lead Plaintiffs filed the letter of request with the Singaporean Court through local Singaporean counsel on September 19, 2024 and were negotiating the scope of production at the time the Parties reached their agreement in principle to resolve all issues and claims involved in this Action.

On August 6, 2024, Lead Plaintiffs served their second request for production of documents and first set of requests for admission, and Defendants served responses and objections thereto on September 5, 2024.

On August 14, 2024, Lead Plaintiffs served their third request for production of documents, and Defendants served responses and objections thereto on September 13, 2024.

In connection with the Parties' respective discovery requests, Defendants produced nearly 38,000 documents totaling over 250,000 pages and Lead Plaintiffs produced 64 documents totaling nearly 1,000 pages.

On August 23, 2024, Lead Plaintiffs filed an unopposed motion seeking issuance of letters rogatory pursuant to the Hague Convention to J.P. Morgan (S.E.A.) Limited in Singapore, which the Court granted on August 28, 2024. ECF Nos. 125-27, 129. The Court also issued the letter of request on August 28, 2024. ECF No. 130. Lead Plaintiffs filed the letter of request with the Singaporean Court through local Singaporean counsel on September 19, 2024 and were negotiating the scope of production at the time the Parties reached their agreement in principle to resolve all issues and claims involved in this Action.

During this time, Lead Plaintiffs also engaged in extensive third-party discovery, having collectively subpoenaed eight (8) domestic non-parties who have together produced over 8,700 documents totaling nearly 44,950 pages.

On November 1, 2024, Lead Plaintiffs filed a letter that, *inter alia*, advised the Court that the Parties had accepted a mediator's proposal from mediator David Murphy, Esq. of Phillips ADR Enterprises to settle this Action. ECF No. 135. The same day, the Court entered an order setting a December 30, 2024 deadline for the parties to file either this Stipulation of Settlement or a joint status update. ECF No. 136.

## II.    THE SETTLEMENT

On July 30, 2024, Co-Lead Counsel and counsel for Defendants engaged in a full-day mediation session before Mr. Murphy, a well-respected and highly experienced mediator. SLG and Defendant Oey also attended the mediation. Prior to the mediation session, the Parties exchanged detailed mediation statements. The Parties did not reach an agreement to resolve the Action during the mediation, so the parties returned to litigation. However, Lead Plaintiffs and Defendants continued to negotiate a possible settlement through Mr. Murphy and upon his recommendation, the Parties agreed to participate in a second mediation via Zoom.

On October 16, 2024, Co-Lead Counsel and counsel for Defendants engaged in another full-day mediation session before Mr. Murphy. SLG and Defendant Oey also attended the second mediation. While the Parties did not reach an agreement during the second mediation, Lead Plaintiffs and Defendants continued to negotiate a possible settlement through Mr. Murphy.

On October 23, 2024, Mr. Murphy issued a double-blind mediator's recommendation to resolve the claims in the Action, which all Parties subsequently accepted.

On November 1, 2024, Lead Plaintiffs notified the Court that the Parties agreed in principle to resolve all issues and claims involved in this Action. ECF No. 136.

### III.    DEFENDANTS' DENIAL OF WRONGDOING AND LIABILITY

Defendants have denied and continue to deny any wrongdoing or that they have committed any act or omission giving rise to any liability or violation of law, including the U.S. securities laws. Defendants have denied and continue to deny all charges of wrongdoing or liability against them arising out of the conduct, statements, acts or omissions alleged or that could have been alleged in the Action, including each and every one of the claims alleged by Lead Plaintiffs in the Action on behalf of the Settlement Class, including all claims in the Complaint (or any other complaint filed in the Action). Defendants also have denied, and continue to deny, *inter alia*, the allegations that Lead Plaintiffs or Settlement Class Members have suffered damage or were otherwise harmed by the conduct alleged in the Action or that could have been alleged in the Action. Defendants have asserted, and continue to assert, that, at all times, they acted in good faith and in a manner they reasonably believed to be in accordance with all applicable rules, regulations, and laws, and further maintain that they have meritorious defenses. By entering into this Settlement, Defendants make no admission of liability or any form of wrongdoing whatsoever. Nonetheless, the Defendants have determined that it is desirable and beneficial to them that the Action be settled in the manner and upon the terms and conditions set forth in this Stipulation solely to avoid the further expense, inconvenience, and burden of this Action, the distraction and diversion of personnel and resources, and to obtain the conclusive and complete dismissal or release of this Action and the Released Claims.

The Stipulation, any proceedings relating to any settlement, or any of the terms of any settlement, whether or not consummated or approved by the Court, shall in no event be construed as, or deemed to be evidence of, an admission or concession on the part of the Defendants, or any of them, with respect to any fact or matter alleged in the Action, or any claim of fault or liability

6

or wrongdoing or damage whatsoever, or any infirmity of any claim or defense that has or could have been asserted. Further, this Stipulation, and all related documents, shall not be construed as or deemed to be evidence of any deception, negligence, fault, liability, wrongdoing, or damage whatsoever, of any kind or by any Defendant, or in any way referred to for any other reason as against any Defendant in any civil, criminal, or administrative action or proceeding. Each Defendant reserves all defenses to any claims that may be filed by anyone, including any individual or entity that has sought, or seeks, exclusion from the Settlement Class.

## IV.    CLAIMS OF LEAD PLAINTIFFS AND BENEFITS OF SETTLEMENT

In connection with this Action, Lead Plaintiffs, through Co-Lead Counsel, conducted a thorough investigation relating to the claims, defenses, and underlying events and transactions that are the subject of the Action. This process included reviewing and analyzing: (i) Grab's and AGC's public filings with the SEC; (ii) publicly available information, including press releases, news articles, interviews, conference calls, and other public statements issued by or concerning the Company and/or Defendants; (iii) information obtained from interviews with knowledgeable individuals; (iv) nearly 300,000 pages of documents (produced by Defendants and third parties), as well as discovery responses; (v) reports of securities and financial analysts about the Company, and other commentary and analysis concerning Grab and the industry in which it operates; and (vi) the applicable law governing the claims and potential defenses. Lead Plaintiffs also consulted with experts on damages and causation, among other issues, responded to Defendants' motion to dismiss, and prepared a motion for class certification.

Lead Plaintiffs believe that the claims asserted in the Action have merit and that the information developed to date supports the claims asserted. However, Lead Plaintiffs and Co-Lead Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Action through discovery, class certification, summary judgment, trial and appeals. They also have considered the uncertain outcome and the risk of any litigation, especially in complex actions such as the Action, as well as the difficulties and delays inherent in such litigation. Lead Plaintiffs and Co-Lead Counsel are also cognizant of the remaining insurance

available to Defendants, and of the risks of enforcing a judgment against the Defendants, many of whom are located in Singapore, after trial. Co-Lead Counsel also are mindful of the inherent problems of proof and the possible defenses to the claims alleged in the Action. Based on their evaluation, Lead Plaintiffs and Co-Lead Counsel believe that the Settlement set forth in this Stipulation confers substantial monetary benefits upon, and is in the best interests of, the Settlement Class.

## V.    TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

**NOW THEREFORE**, without any concession by Lead Plaintiffs that the Action lacks merit, and without any concession by Defendants of any liability or wrongdoing or lack of merit of their defenses, it is hereby **STIPULATED AND AGREED**, by and among Lead Plaintiffs, on behalf of themselves and the Settlement Class, and Defendants, through their respective attorneys, subject to approval by the Court pursuant to Federal Rule of Civil Procedure 23(e), that, in consideration of the benefits flowing to the Parties hereto, the Action shall be dismissed with prejudice, and all Released Claims, as against all Released Parties, shall be fully, finally, and forever compromised, settled, released, discharged, and dismissed with prejudice, and without costs except as otherwise specified herein, upon and subject to the following terms and conditions:

## 1. DEFINITIONS

As used in this Stipulation, the following terms shall have the meanings set forth below. In the event of any inconsistency between any definition set forth below and any definition in any other document related to the Settlement, the definition set forth below shall control.

1.1    "Action" means the consolidated civil action captioned *In re Grab Holdings Limited Securities Litigation*, Case No. 1:22-cv-02189-JLR, pending in the United States District Court for the Southern District of New York before the Honorable Jennifer L. Rochon.

1.2    "Authorized Claimant" means a Settlement Class Member who submits a valid Proof of Claim and Release form to the Claims Administrator that is accepted for payment.

1.3     "Claims Administrator" means A.B. Data Ltd., the firm to be retained by Co-Lead Counsel, subject to Court approval, to provide all notices approved by the Court to Settlement Class Members, to process proofs of claim, and to administer the Settlement.

1.4     "Co-Lead Counsel" means Levi & Korsinsky, LLP for Lead Plaintiff SLG Cloudbank Holdings LLC, and Pomerantz LLP for Lead Plaintiffs Amit Batra and Si Fan.

1.5     "Defendants" means Grab Holdings Limited, Brad Gerstner, Hab Siam, Richard N. Barton, Aishetu Fatima Dozie, Dev Ittycheria, Anthony Tan, Peter Oey, Tan Hooi Ling, John Rogers, Dara Khosrowshahi, Ng Shin Ein, and Oliver Jay.

1.6     "Defendants' Counsel" means the law firm of Ropes & Gray LLP as to Individual Defendants Gerstner, Siam, Barton, Dozie, and Ittycheria, and the law firm of Skadden, Arps, Slate, Meagher & Flom LLP as to Defendant Grab and Individual Defendants Tan, Oey, Ling, Rogers, Khosrowshahi, Ein, and Jay.

1.7     "Effective Date" means the date upon which the Settlement shall have become effective, as set forth in ¶11.1 below.

1.8     "Escrow Account" means the separate, interest-bearing escrow account designated and controlled by the Escrow Agent wherein the Settlement Amount shall be deposited and held for the benefit of the Settlement Class pursuant to this Stipulation and subject to the jurisdiction of the Court.

1.9     "Escrow Agent" means Huntington National Bank.

1.10    "Fee and Expense Application" means Co-Lead Counsel's application for an award of attorneys' fees and payment of litigation expenses incurred in prosecuting the case, including any expenses of Lead Plaintiffs pursuant to 15 U.S.C. § 78u-4(a)(4) of the Private Securities Litigation Reform Act of 1995 ("PSLRA").

1.11    "Final," with respect to a court order, means the later of: (i) if there is an appeal from a court order, the date of final affirmance on appeal and the expiration of the time for any further judicial review whether by appeal, reconsideration or a petition for a *writ of certiorari* and, if *certiorari* is granted, the date of final affirmance of the order following review pursuant to the

9

grant; or (ii) the date of final dismissal of any appeal from the order or the final dismissal of any proceeding on *certiorari* to review the order; or (iii) the expiration of the time for the filing or noticing of any appeal or petition for *certiorari* from the order (or, if the date for taking an appeal or seeking review of the order shall be extended beyond this time by order of the issuing court, by operation of law or otherwise, or if such extension is requested, the date of expiration of any extension if any appeal or review is not sought), without any such filing or noticing being made. However, any appeal or proceeding seeking subsequent judicial review pertaining solely to the Plan of Allocation of the Net Settlement Fund, or to the Court's award of attorneys' fees or expenses, shall not in any way delay or affect the time set forth above for the Judgment to become Final or otherwise preclude the Judgment from becoming Final.

1.12    "Grab Class A Ordinary Shares" means the Grab class A ordinary shares registered pursuant to the Proxy/Registration Statement.

1.13    "Individual Defendants" means Brad Gerstner, Hab Siam, Richard N. Barton, Aishetu Fatima Dozie, Dev Ittycheria, Anthony Tan, Peter Oey, Tan Hooi Ling, John Rogers, Dara Khosrowshahi, Ng Shin Ein, and Oliver Jay.

1.14    "Judgment" means the proposed judgment to be entered by the Court approving the Settlement, substantially in the form attached hereto as Exhibit B.

1.15    "Lead Plaintiffs" means Amit Batra, Si Fan, and SLG Cloudbank Holdings, LLC.

1.16    "Lock-Up Agreement" means any agreement limiting the resale eligibility of Grab Class A Ordinary Shares to which AGC, Grab, or either of their predecessors was a party, in connection with the business combination that formed Grab.

1.17    "Mediator" means David Murphy, Esq., of Phillips ADR Enterprises.

1.18    "Net Settlement Fund" means the Settlement Fund less: (i) Court-awarded attorneys' fees and expenses (which may include an application for an award to Lead Plaintiffs, which payment includes but is not limited to, reimbursement of Lead Plaintiffs' reasonable costs and expenses related to their representation of the Settlement Class); (ii) Notice and Administration Expenses; (iii) Taxes; and (iv) any other fees or expenses approved by the Court.

10

1.19    "Notice" means the Notice of Pendency of Class Action and Proposed Settlement, Final Approval Hearing and Motion for Attorneys' Fees and Expenses which, subject to approval of the Court, shall be substantially in the form attached hereto as Exhibit 1 to Exhibit A hereto, and shall be posted on the Claims Administrator's website related to this Settlement.

1.20    "Notice and Administration Expenses" means all costs, fees, and expenses incurred in connection with providing notice to the Settlement Class and the administration of the Settlement, including but not limited to: (i) providing notice of the proposed Settlement by email where practicable, mail, publication, and other means to Settlement Class Members; (ii) receiving and reviewing claims; (iii) applying the Plan of Allocation; (iv) communicating with Persons regarding the proposed Settlement and claims administration process; (v) distributing the proceeds of the Settlement; and (vi) fees related to the Escrow Account and investment of the Settlement Fund.

1.21    "Parties" means Court-Appointed Lead Plaintiffs Amit Batra, Si Fan, and SLG Cloudbank Holdings, LLC, and Defendants Grab Holdings Limited, Brad Gerstner, Hab Siam, Richard N. Barton, Aishetu Fatima Dozie, Dev Ittycheria, Anthony Tan, Peter Oey, Tan Hooi Ling, John Rogers, Dara Khosrowshahi, Ng Shin Ein, and Oliver Jay.

1.22    "Person(s)" means any individual, corporation (including all divisions and subsidiaries), general or limited partnership, association, joint stock company, joint venture, limited liability company, professional corporation, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any other business or legal entity.

1.23    "PIPE Investors" means the third-party investors who entered into PIPE Subscription Agreements.

1.24    "PIPE Subscription Agreements" means the share subscription agreements, dated April 12, 2021, by and among Grab, AGC, and the PIPE Investors pursuant to which the PIPE Investors committed to subscribe for and purchase, in the aggregate, 326,500,000 Grab Class A Ordinary Shares for $10 per share, or an aggregate purchase price equal to $3.265 billion.

11

1.25    "Plan of Allocation" means the proposed Plan of Allocation of Net Settlement Fund, which, subject to the approval of the Court, shall be substantially in the form described in the Notice.

1.26    "Postcard Notice" means the postcard form notice which, subject to Court approval, shall be substantially in the form attached hereto as Exhibit 3 to Exhibit A hereto, and which shall be emailed where practicable and otherwise mailed first class, postage prepaid, to Settlement Class Members and third-party nominees and custodians (the "Postcard Notice") that can be identified through reasonable investigation.

1.27    "Preliminary Approval Order" means the proposed Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice, and Setting Date for Hearing on Final Approval of Settlement which, subject to Court approval, shall be substantially in the form attached hereto as Exhibit A.

1.28    "Proof of Claim" or "Claim Form" means the Proof of Claim and Release form for submitting a claim which, subject to Court approval, shall be substantially in the form attached as Exhibit 2 to Exhibit A hereto, and shall be posted on the Claims Administrator's website related to this Settlement.

1.29    "Released Claims" means both Releasing Plaintiffs' Parties' Claims and Released Defendants' Claims.

1.30    "Released Defendants' Parties" means (i) each Defendant; (ii) the family members of the Individual Defendants; (iii) direct or indirect parent entities, direct and indirect subsidiaries, related entities, and all affiliates of Grab, Grab Holdings, Inc. or AGC, including but not limited to Altimeter Capital Management, LP and Altimeter Partners Fund, LP, and their affiliated entities, employees, or agents; (iv) any trust of which any Individual Defendant is the settlor or which is for the benefit of any Individual Defendant and/or his or her family members; (v) for any of the persons or entities listed in parts (i) through (iv), as applicable, their respective past, present, and future general partners, limited partners, principals, shareholders, joint venturers, officers, directors, managers, managing directors, supervisors, employees, contractors, consultants,

experts, auditors, accountants, financial advisors, insurers, reinsurers, indemnitors, trustees, trustors, agents, attorneys, predecessors, successors, assigns, heirs, executors, administrators, estates, and any controlling person thereof; and (vi) any entity in which a Defendant has a controlling interest; all in their capacities as such (each of the foregoing, a "Released Defendants' Party").

1.31    "Released Defendants' Claims" means all claims and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims asserted in the Action against Defendants. The Released Defendants' Claims shall not include any claims relating to the enforcement of the settlement. As set forth below, this release includes a standard provision regarding the waiver of the benefits conferred by California Civil Code § 1542 or any other similar provision of law.

1.32    "Released Parties" means the Released Defendants' Parties and the Released Plaintiffs' Parties.

1.33    "Released Plaintiffs' Parties" means (i) Lead Plaintiffs, all Settlement Class Members, any other plaintiffs in the Action and their counsel, Lead Plaintiffs' Counsel, liaison counsel or referring counsel, and (ii) each of their respective immediate family members, and their respective partners, general partners, limited partners, principals, shareholders, joint venturers, members, officers, directors, managing directors, supervisors, employees, contractors, consultants, experts, auditors, accountants, financial advisors, insurers, trustees, trustors, agents, attorneys, predecessors, successors, assigns, heirs, executors, administrators, and any controlling person thereof, all in their capacities as such (each of the foregoing, a "Released Plaintiffs' Party"). Released Plaintiffs' Parties does not include any Person who timely and validly seeks exclusion from the Settlement Class.

1.34    "Releasing Plaintiffs' Parties" means Lead Plaintiffs and other members of the Settlement Class, together with their successors, assigns, executors, heirs, administrators,

representatives, attorneys, and agents, in their capacities as such (each of the foregoing, a "Releasing Plaintiffs' Party").

1.35    "Releasing Plaintiffs' Parties' Claims" means all claims, actions, causes of action, demands, losses, rights, duties, obligations, debts, sums of money, suits, contracts, agreements, judgments, matters, issues, promises, damages and liabilities of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, common or foreign law, that Lead Plaintiffs, any other member of the Settlement Class, or any other Releasing Plaintiffs' Party: (i) asserted in the Complaint (or any other complaint filed in the Action) or (ii) could have asserted in any forum that arise out of, are based on, or relate in any way to, directly or indirectly, any of the allegations, acts, transactions, facts, events, matters, occurrences, representations or omissions involved, set forth, alleged or referred to, in the Action, or which could have been alleged in the Action, or which arise out of, are based upon, or relate in any way, directly or indirectly, to the purchase, acquisition, transfer, holding, ownership, disposition or sale of Grab or AGC securities (including by way of exchange as a result of the business combination between Grab and AGC) or the voting or solicitation of a vote or proxy relating to the business combination with Grab pursuant to the Proxy/Registration Statement (regardless of whether the shareholder elected to retain or redeem AGC shares) by any members of the Settlement Class, and/or any disclosures, public filings, registration statements, or other statements by Grab, Grab Holdings, Inc., AGC, or any Defendant during the Class Period, whether arising under federal, state, common or foreign law. Releasing Plaintiffs' Parties' Claims shall not include (i) any claims relating to the enforcement of the Settlement; and (ii) any claims of any person or entity who or which submits a request for exclusion from the Settlement Class that is accepted by the Court. As set forth below, this release includes a standard provision regarding the waiver of the benefits conferred by California Civil Code § 1542 or any other similar provision of law.

1.36    "Settlement" means the resolution of the Action in accordance with the terms and provisions of this Stipulation.

1.37    "Settlement Amount" means eighty million U.S. dollars ($80,000,000.00) in cash.

1.38    "Settlement Class" or "Settlement Class Member" means all persons or entities who: (i) purchased or otherwise acquired public shares in Grab (including by way of exchange of AGC shares) pursuant to or traceable to the proxy/registration statement that Grab filed with the SEC on Form F-4 on August 2, 2021, and that was thereafter amended on Forms F-4/A on September 13, 2021, October 18, 2021, November 12, 2021, November 17, 2021, and November 19, 2021, and incorporated into the final prospectus on Form 424(b)(3) filed on November 19, 2021, as amended (the "Proxy/Registration Statement"); (ii) who exchanged AGC shares for Grab Class A Ordinary Shares rather than redeeming the same pursuant to the Proxy/Registration Statement; or (iii) purchased or otherwise acquired public Grab Class A Ordinary Shares or other public Grab or AGC securities between August 2, 2021 and March 3, 2022, both dates inclusive. Excluded from the Settlement Class are: (a) Defendants and their immediate families; (b) current and former directors or officers of Grab or AGC; and (c) claims relating to the purchase or acquisition of Grab shares subject to a Lock-Up Agreement referenced in the Proxy/Registration Statement. To avoid doubt, the Settlement Class definition is intended to encompass claims of public AGC shareholders who purchased or otherwise acquired public Grab Class A Ordinary Shares as well as claims relating to the approximately 20.97% of Grab Class A Ordinary Shares that were not subject to a Lock-Up Agreement and became freely transferable on December 2, 2021, but is not intended to encompass claims of the PIPE Investors in their capacity as such or claims related to Grab shares acquired through the exchange of Sponsor shares. Also excluded from the Settlement Class are all putative members of the Settlement Class who exclude themselves by filing a valid and timely request for exclusion.

1.39    "Settlement Class Counsel" means Levi & Korsinsky, LLP and Pomerantz LLP.

1.40    "Settlement Fund" means the Settlement Amount and any interest earned thereon.

1.41    "Settlement Hearing" means the hearing to be held by the Court to determine whether: (i) the Settlement is fair, reasonable, and adequate, and should be finally approved; (ii) the Plan of Allocation is fair and reasonable and should be approved; and (iii) Co-Lead Counsel's

application for attorneys' fees and expenses and Lead Plaintiffs' awards are reasonable and should be approved.

1.42    "Sponsor" means Altimeter Growth Holdings, a limited liability company incorporated under the laws of the Cayman Islands.

1.43    "Stipulation" means this Stipulation and Agreement of Settlement.

1.44    "Summary Notice" means the Summary Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses which, subject to Court approval, shall be substantially in the form attached as Exhibit 4 to Exhibit A hereto, and which shall be published in two widely-circulated national wire services.

1.45    "Taxes" means all federal, state, or local taxes of any kind on any income earned by the Settlement Fund and the expenses and costs incurred in connection with the taxation of the Settlement Fund (including, without limitation, interest, penalties and the reasonable expenses of tax attorneys and accountants).

1.46    "Unknown Claims" means any and all Released Claims that the Releasing Plaintiffs' Parties (with respect to Releasing Plaintiffs' Parties' Claims) or Defendants (with respect to Released Defendants' Claims) do not know or suspect to exist at the time of the release. This includes claims which, if known, might have affected the Settlement and Releasing Plaintiffs' Parties' Claims and Released Defendants' Claims, including the decision to object or not to object to this Settlement.  The Parties expressly acknowledge and shall be deemed to have expressly waived and relinquished any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or any other jurisdiction, or principle of common law that is, or is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

Lead Plaintiffs, other Settlement Class Members, or Defendants may hereafter discover facts, legal theories, or authorities in addition to or different from those which any of them now knows or believes to be true with respect to the subject matter of the Released Claims, but Lead Plaintiffs and Defendants shall expressly, fully, finally, and forever settle and release, and each Settlement Class Member shall be deemed to have settled and released, and upon the Effective Date and by operation of the Judgment shall have settled and released, fully, finally, and forever, any and all Released Claims as applicable, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities. Lead Plaintiffs and Defendants acknowledge, and other Settlement Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims and was separately bargained for and was a material element of the Settlement.

## 2. SCOPE AND EFFECT OF SETTLEMENT

2.1    The obligations incurred pursuant to this Stipulation are: (i) subject to approval by the Court and the Judgment reflecting such approval becoming Final; and (ii) in full and final disposition of the Action with respect to the Released Parties and any and all Released Claims including Released Defendants' Claims and Releasing Plaintiffs' Parties' Claims.

2.2    Solely for the purposes of this Settlement and without waiving any rights, Defendants agree not to contest that the Settlement Class satisfies all requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3), such that this Action is properly maintained as a class action.

2.3    By operation of the Judgment, as of the Effective Date, each and every one of the Releasing Plaintiffs' Parties, on behalf of themselves and each of their respective heirs, executors, trustees, administrators, predecessors, successors, and assigns, in their capacities as such, shall be deemed to have fully, finally, and forever waived, released, relinquished, discharged, and dismissed each and every one of the Released Claims against each and every one of the Released Defendants' Parties and shall forever be barred and enjoined from commencing, instituting, prosecuting, or maintaining any and all of the Released Claims against any and all of the Released

Defendants' Parties, whether or not such Settlement Class Member executes and delivers the Proof of Claim and Release form, and whether or not such Settlement Class Member shares or seeks to share in the Settlement Fund. In addition, by operation of the Judgment, as of the Effective Date, in exchange for the mutual releases and other consideration set forth herein, including full payment of the Settlement Amount by or on behalf of Defendants, the Action shall be dismissed with prejudice as set forth herein.

2.4     By operation of the Judgment, as of the Effective Date, Defendants, on behalf of themselves and each of their respective heirs, executors, trustees, administrators, predecessors, successors, and assigns, in their capacities as such, shall be deemed to have fully, finally, and forever waived, released, discharged, and dismissed each and every one of the Released Defendants' Claims against each and every one of the Released Plaintiffs' Parties and shall forever be barred and enjoined from commencing, instituting, prosecuting, or maintaining any and all of the Released Defendants' Claims against any and all of the Released Plaintiffs' Parties.

## 3.  THE SETTLEMENT CONSIDERATION

3.1     In full settlement of the claims asserted in the Action against Defendants and in consideration of the releases specified in ¶¶2.3–2.4, *supra*, all of which the Parties agree are good and valuable consideration, Grab shall pay, or cause to be paid by Defendants' insurers, the Settlement Amount into the Escrow Account within twenty-five (25) business days after the later of: (1) the Court's entry of an order preliminarily approving the Settlement; and (2) Co-Lead Counsel providing to Defendants' Counsel a Form W-9, wire transfer check or electronic payment (ACH) instructions and/or any requisite electronic or other payment authorization forms, and the name and telephone number of an individual who can verbally confirm wire or related payment instructions. No Defendant other than Grab shall pay, or be liable to pay, any part of the Settlement Amount.

3.2     Neither Defendants nor their counsel shall have responsibility for, interest in, or liability whatsoever with respect to: (i) any act, omission, or determination by Co-Lead Counsel or the Claims Administrator, or any of their respective designees or agents, in connection with the

18

administration of the Settlement or otherwise; (ii) the management, investment, or distribution of the Settlement Fund; (iii) the Plan of Allocation; (iv) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (v) any loss suffered by, or fluctuation in value of, the Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses, or costs incurred in connection with the taxation of the Settlement Fund, distributions or other payments from the Escrow Account, or the filing of any federal, state, or local returns.

3.3    Other than the obligation of Defendants to cause the payment of the Settlement Amount pursuant to ¶3.1, Defendants shall have no obligation to make any other payments into the Escrow Account or to any Settlement Class Member or Co-Lead Counsel in settlement of this Action or pursuant to this Stipulation, including, without limitation, any responsibility or liability related to any fees, taxes, investment decisions, maintenance, supervision or distribution of any portion of the Settlement Amount.

## 4. USE AND TAX TREATMENT OF SETTLEMENT FUND

4.1    The Settlement Fund shall be used: (i) to pay any Taxes; (ii) to pay Notice and Administration Expenses; (iii) to pay any attorneys' fees and expenses awarded by the Court (which may include an application for an award to Lead Plaintiffs); (iv) to pay any other fees and expenses awarded by the Court; and (v) to pay the claims of Authorized Claimants.

4.2    The Net Settlement Fund shall be distributed to Authorized Claimants as provided in ¶¶7.1–8.8 hereof, *infra*. The Net Settlement Fund shall remain in the Escrow Account prior to the Effective Date. All funds held in the Escrow Account, and all interest thereon, shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds shall have been disbursed or returned, pursuant to the terms of this Stipulation, or further order of the Court. The Escrow Agent shall invest funds in the Escrow Account in instruments backed by the full faith and credit of the United States Government (or a mutual fund invested solely in such instruments), or deposit some or all of the funds in non-interest-bearing transaction account(s) that are fully insured by the Federal Deposit Insurance Corporation

19

("FDIC") in amounts that are up to the limit of FDIC insurance. Defendants and Defendants' Counsel shall have no responsibility for, interest in, or liability whatsoever with respect to investment decisions executed by the Escrow Agent. All risks related to the investment of the Settlement Fund shall be borne solely by the Settlement Fund.

4.3     After the Settlement Amount has been paid into the Escrow Account, the Parties agree to treat the Settlement Fund as a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1. All provisions of this Stipulation shall be interpreted in a manner that is consistent with the Settlement Amount being a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1. In addition, the Escrow Agent shall timely make, or cause to be made, such elections as necessary or advisable to carry out the provisions of this paragraph 11, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date. Such election shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver, or cause to be prepared and delivered, the necessary documentation for signature by all necessary parties, and thereafter take all such actions as may be necessary or appropriate to cause the appropriate filing(s) to timely occur. Consistent with the foregoing:

(a)     For the purposes of Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. § 1.468B promulgated thereunder, the "administrator" shall be the Escrow Agent or its successors, who shall timely and properly file, or cause to be filed, all federal, state, or local tax returns and information returns (together, "Tax Returns") necessary or advisable with respect to the earnings on the funds deposited in the Escrow Account (including without limitation the returns described in Treas. Reg. § 1.468B-2(k)). Such Tax Returns (as well as the election described above) shall be consistent with this subparagraph and in all events shall reflect that all Taxes (including any estimated taxes, earnings, or penalties) on the income earned on the funds deposited in the Escrow Account shall be paid out of such funds as provided in subparagraph (c) of this paragraph.

(b)    All Taxes shall be paid out of the Settlement Fund. In all events, Defendants and Defendants' Counsel shall have no liability or responsibility whatsoever for the Taxes or the filing of any Tax Return or other document with the Internal Revenue Service or any other state or local taxing authority. Defendants shall have no liability or responsibility for the Taxes of the Escrow Account with respect to the Settlement Amount nor the filing of any Tax Returns or other documents with the Internal Revenue Service or any other taxing authority. In the event any Taxes are owed by any of the Defendants on any earnings on the funds on deposit in the Escrow Account, such amounts shall also be paid out of the Settlement Fund.

(c)    Taxes with respect to the Settlement Amount and the Escrow Account shall be treated as, and considered to be, a cost of administration of the Settlement and shall be timely paid, or caused to be paid, by the Escrow Agent out of the Settlement Fund without prior order from the Court or approval by Defendants. The Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(l)(2)). The Parties agree to cooperate with each other, and their tax attorneys and accountants to the extent reasonably necessary, to carry out the provisions of this paragraph. Defendants and Defendants' Counsel shall have no liability or responsibility whatsoever if it is later determined that the Settlement Fund is a not a "qualified settlement fund".

4.4    This is not a claims-made Settlement. As of the Effective Date, the Defendants, or any other Person funding the Settlement on a Defendant's behalf, shall not have any right to the return of the Settlement Fund or any portion thereof for any reason.

## 5. ATTORNEYS' FEES AND EXPENSES

5.1     Co-Lead Counsel will apply to the Court for an award from the Settlement Fund of attorneys' fees and payment of litigation expenses incurred in prosecuting the Action plus interest on such amounts at the same rate and for the same periods as earned by the Settlement Fund. Co-Lead Counsel may also seek awards to Lead Plaintiffs in connection with the prosecution of this Action.

5.2     The amount of attorneys' fees and expenses awarded by the Court and amount of awards to Lead Plaintiffs is within the sole discretion of the Court. Any attorneys' fees and expenses awarded by the Court shall be paid from the Settlement Fund to Co-Lead Counsel immediately after entry of the Order awarding such attorneys' fees and expenses and entry of the Judgment, notwithstanding the existence of any timely filed objections thereto or to the Settlement, or potential for appeal therefrom, or collateral attack on the Fee and Expense Application, the Settlement, or any part thereof.

5.3     Any payment of attorneys' fees and expenses pursuant to ¶¶5.1–5.2 above shall be subject to Co-Lead Counsel's obligations to make refunds or repayments to the Settlement Fund of any paid amounts, plus accrued interest at the same net rate as is earned by the Settlement Fund, if the Settlement is terminated pursuant to the terms of this Stipulation or fails to become effective for any reason, or if, as a result of any appeal or further proceedings on remand or successful collateral attack, the award of attorneys' fees or expenses is reduced or reversed by Final non-appealable court order. Co-Lead Counsel shall make the appropriate refund(s) or repayment(s) in full no later than thirty (30) calendar days after receiving notice of the termination of the Settlement pursuant to this Stipulation, notice from a court of appropriate jurisdiction of the disapproval of the Settlement by Final non-appealable court order, or notice of any reduction or reversal of the award of attorneys' fees or expenses by Final non-appealable court order.

5.4     Any award to Lead Plaintiffs shall be payable upon the Effective Date.

5.5     Defendants shall have no responsibility for, and no liability whatsoever with respect to any allocation of any attorneys' fees or expenses among Co-Lead Counsel in the Action,

or to any other Person who may assert some claim thereto, or any awards the Court may make in the Action.

5.6    Defendants shall have no responsibility for, and no liability whatsoever with respect to, any attorneys' fees, costs, or expenses  incurred by or on behalf of Settlement Class Members, whether or not paid from the Escrow Account. The Settlement Fund will be the sole source of payment from Defendants for any award of attorneys' fees and expenses ordered by the Court.

5.7    The procedure for and the allowance or disallowance by the Court of any Fee and Expense Application are not part of the Settlement set forth in this Stipulation, and any order or proceeding relating to any Fee and Expense Application, including an award of attorneys' fees or expenses in an amount less than the amount requested by Co-Lead Counsel, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel the Stipulation, or affect or delay the finality of the Judgment approving the Stipulation and the Settlement set forth herein. Lead Plaintiffs and Co-Lead Counsel may not cancel or terminate the Stipulation or the Settlement in accordance with ¶12.1 or otherwise based on the Court's or any appellate court's ruling with respect to fees and expenses in the Action.

## 6.  NOTICE AND ADMINISTRATION EXPENSES

6.1    Except as otherwise provided herein, the Net Settlement Fund shall be held in the Escrow Account until the Effective Date.

6.2    Prior to the Effective Date, without further approval from Defendants or further order of the Court, Co-Lead Counsel may cause up to $300,000 in Notice and Administration Expenses invoiced  by the Claims Administrator to be paid from the Settlement Fund.  Additional sums for this purpose prior to the Effective Date may be paid from the Settlement Fund upon agreement of the Parties or order of the Court. Taxes and fees related to the Escrow Account and investment of the Settlement Fund may be paid as incurred, without further approval of Defendants or further order of the Court. After the Effective Date, without approval of Defendants, Notice and Administration Expenses may be paid upon further order of the Court.

The Released Defendants' Parties shall have no responsibility for or liability whatsoever with respect to the Notice and Administration Expenses, nor shall they have any responsibility or liability whatsoever for any claims with respect thereto.

6.3    No later than ten (10) calendar days following the filing of this Stipulation with the Court (the "CAFA Notice Date"), Defendants shall serve the notice required under the Class Action Fairness Act, 28 U.S.C. § 1715 et seq. ("CAFA"), and shall confirm with Co-Lead Counsel via email that such service was made. Defendants are solely responsible for the costs of the CAFA notice and administering the CAFA notice. At least seven (7) calendar days before the Settlement Hearing, Defendants' Counsel shall file a letter with the Court providing notice that all requirements of CAFA §1715(b) have been complied with. The Parties will request that the Settlement Hearing not be scheduled until at least 90 days following the CAFA Notice Date.

## 7. DISTRIBUTION TO AUTHORIZED CLAIMANTS

7.1    Except as otherwise provided herein, the Settlement Fund shall be held in the Escrow Account until the Effective Date.

7.2    The Claims Administrator, subject to such supervision and direction of Co-Lead Counsel or the Court as may be necessary or as circumstances may require, shall administer the Settlement in accordance with the terms of this Stipulation, the Court-approved Plan of Allocation, and subject to the jurisdiction of the Court. Defendants and the Defendants' Counsel shall have no responsibility for (except as stated in ¶¶3.1 and 9.2 hereof), interest in, or liability whatsoever with respect to the administration of the Settlement or the actions or decisions of the Claims Administrator, and shall have no liability to the Settlement Class in connection with such administration.

7.3    The Claims Administrator shall determine each Authorized Claimant's share of the Net Settlement Fund based upon each Authorized Claimant's recognized loss, as defined in the Plan of Allocation included in the Notice, or in such other plan of allocation as the Court may approve.

7.4    Defendants have no role in the development of, and will take no position with respect to, the Plan of Allocation. Any decision by the Court concerning the Plan of Allocation shall not affect the validity or finality of the proposed Settlement. The Plan of Allocation is not a necessary term of this Stipulation and it is not a condition of this Stipulation that any particular plan of allocation be approved by the Court. Lead Plaintiffs and Co-Lead Counsel may not cancel or terminate the Stipulation or the Settlement in accordance with ¶12.1 or otherwise based on the Court's or any appellate court's ruling with respect to the Plan of Allocation or any plan of allocation in the Action. Defendants and Defendants' Counsel shall have no responsibility or liability for reviewing or challenging claims, the allocation of the Net Settlement Fund, the Plan of Allocation, or the distribution of the Net Settlement Fund.

7.5    Upon the Effective Date and thereafter, and in accordance with the terms of the Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants.

7.6    If there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise) after at least six (6) months from the date of initial distribution of the Net Settlement Fund, the Claims Administrator shall, if feasible and economical after payment of Notice and Administration Expenses, Taxes, and attorneys' fees and expenses and other awards approved by the Court, if any, redistribute such balance in an equitable and economic fashion among Authorized Claimants who have cashed their checks. If any funds remain thereafter in the Net Settlement Fund that cannot be feasibly redistributed, and after payment of outstanding Notice and Administration Expenses, Taxes, attorneys' fees and expenses and other awards approved by the Court, Co-Lead Counsel shall, after conferring with Grab's counsel, propose a non-sectarian, non-profit to the Court for a *cy pres* distribution.

## 8.    ADMINISTRATION OF THE SETTLEMENT

8.1    Any Settlement Class Member who fails to timely submit a valid Proof of Claim (substantially in the form of Exhibit 2 to Exhibit A), including appropriate documentation of

claimed transactions, will not be entitled to receive any of the proceeds from the Net Settlement Fund, except as otherwise ordered by the Court, but will otherwise be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment to be entered in the Action and all releases provided for herein, and will be barred from bringing any action against the Released Defendants' Parties concerning the Released Claims.

8.2    Co-Lead Counsel shall be responsible for supervising the administration of the Settlement and disbursement of the Net Settlement Fund by the Claims Administrator. Co-Lead Counsel shall have the right, but not the obligation, to advise the Claims Administrator to waive what Co-Lead Counsel deems to be *de minimis* or formal or technical defects in any Proof of Claim submitted. Defendants and Defendants' Counsel shall have no liability, obligation or responsibility for the administration of the Settlement, the allocation of the Net Settlement Fund, or reviewing or challenging claims. Co-Lead Counsel shall be solely responsible for designating the Claims Administrator, subject to approval by the Court.

8.3    For purposes of determining the extent, if any, to which a claimant shall be entitled to be treated as an Authorized Claimant, the following conditions shall apply:

(a)    Each claimant shall be required to submit a Claim Form, substantially in the form attached hereto as Exhibit 2 to Exhibit A, supported by such documents as are designated therein, including proof of the claimant's loss, or such other documents or proof as the Claims Administrator or Co-Lead Counsel, in their discretion, may deem acceptable;

(b)    All Claim Forms must be submitted by the date set by the Court in the Preliminary Approval Order and specified in the Notice, unless such deadline is extended by Order of the Court. Any Settlement Class Member who fails to submit a Claim Form by such date shall be barred from receiving any distribution from the Net Settlement Fund or payment pursuant to this Stipulation (unless, by Order of the Court, late-filed Claim Forms are accepted), but shall in all other respects be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment and all releases

provided for herein, and will be permanently barred and enjoined from bringing any action, claim or other proceeding of any kind against any Released Defendants' Party. A Claim Form shall be deemed to be submitted when emailed to the Claims Administrator, or when mailed, if received with a postmark on the envelope and if mailed by first-class or overnight U.S. Mail and addressed in accordance with the instructions thereon. In all other cases, the Claim Form shall be deemed to have been submitted when actually received by the Claims Administrator;

(c)    Each Claim Form shall be submitted to and reviewed by the Claims Administrator, under the supervision of Co-Lead Counsel, which shall determine in accordance with this Stipulation the extent, if any, to which each claim shall be allowed;

(d)    Claim Forms that do not meet the submission requirements may be rejected. Prior to rejecting a Claim Form in whole or in part, the Claims Administrator shall communicate with the claimant in writing to give the claimant the chance to remedy any curable deficiencies in the Claim Form submitted. The Claims Administrator, under supervision of Co-Lead Counsel, shall notify, in a timely fashion and in writing or by email, all claimants whose claims the Claims Administrator proposes to reject in whole or in part for curable deficiencies, setting forth the reasons therefor, and shall indicate in such notice that the claimant whose claim is to be rejected has the right to a review by the Court if the claimant so desires and complies with the requirements of subparagraph (e) below; and

(e)    If any claimant whose timely claim has been rejected in whole or in part for curable deficiency desires to contest such rejection, the claimant must, within twenty (20) calendar days after the date of mailing of the notice required in subparagraph (d) above, or a lesser period of time if the claim was untimely, serve upon the Claims Administrator a notice and statement of reasons indicating the claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review

27

thereof by the Court. If a dispute concerning a claim cannot be otherwise resolved, Co-Lead Counsel shall thereafter present the request for review to the Court.

8.4     Each claimant who submits a Claim Form shall be deemed to have submitted to the jurisdiction of the Court with respect to the claimant's claim, including but not limited to, all releases provided for herein and in the Judgment, and the claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to the claimant's status as a Settlement Class Member and the validity and amount of the claimant's claim. In connection with processing the Claim Forms, no discovery shall be allowed to be directed to any of the Released Defendants' Parties, and no discovery shall be allowed on the merits of the Action or the Settlement.

8.5     Payment pursuant to the Stipulation and Court-approved Plan of Allocation shall be deemed final and conclusive against any and all claimants. All Settlement Class Members whose claims are not approved shall be barred from participating in distributions from the Net Settlement Fund, but otherwise shall be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment to be entered in the Action and the releases provided for herein and therein, and will be barred from bringing any action against the Released Defendants' Parties concerning the Released Claims.

8.6     All proceedings with respect to the administration, processing and determination of claims described by this Stipulation and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of the Court, but shall not in any event delay or affect the finality of the Judgment.

8.7     No Person shall have any claim of any kind against the Released Defendants' Parties or Defendants' Counsel with respect to the matters set forth in this section (*i.e.*, ¶¶8.1–8.8) or any of its subsections, or otherwise related in any way to the administration of the Settlement, including without limitation the processing of claims and investment or distributions of the Settlement Fund.

8.8     No Person shall have any claim against Co-Lead Plaintiffs or the Claims Administrator, or other agent designated by Co-Lead Counsel, based on the distributions made substantially in accordance with this Stipulation and the Settlement contained herein, the Plan of Allocation, or further order(s) of the Court.

## 9.  TERMS OF THE PRELIMINARY APPROVAL ORDER

9.1     Concurrently with their application for preliminary approval by the Court of the Settlement contemplated by this Stipulation and promptly upon execution of this Stipulation, Co-Lead Counsel shall apply to the Court for entry of the Preliminary Approval Order, which shall be substantially in the form annexed hereto as Exhibit A. The Preliminary Approval Order will, *inter alia*, preliminarily approve the Settlement, set the date for the Settlement Hearing, approve the form of notice, and prescribe the method for giving notice of the Settlement to the Settlement Class.

9.2     Grab or its counsel shall provide, or cause to be provided, Co-Lead Counsel or the Claims Administrator, at no cost to Lead Plaintiffs, the Settlement Fund, Co-Lead Counsel, or the Claims Administrator, no later than ten (10) business days after entry of the Preliminary Approval Order, lists of shareholders of record during the period from August 2, 2021 and March 3, 2022 in electronic format, such as Excel, to the extent such lists are reasonably available from Grab's stock transfer agent. Grab's efforts herein shall include requesting Grab's transfer agent during the Settlement Class Period (as defined in the Notice) grant Lead Plaintiffs and the Claims Administrator any necessary authorizations or permissions to access the transfer records described in this Paragraph.  Grab or its counsel shall also provide Co-Lead Counsel a list of persons and entities that had entered into a lock-up agreement restricting the transfer of Grab shares effective at any time between December 1, 2021 and March 3, 2022 to the extent such list is reasonably accessible.

## 10. TERMS OF THE JUDGMENT

10.1    If the Settlement contemplated by this Stipulation is finally approved by the Court, Co-Lead Counsel shall request that the Court enter a Judgment substantially in the form annexed hereto as Exhibit B.

## 11. EFFECTIVE DATE OF SETTLEMENT

11.1    The Effective Date of this Settlement shall be the first business day on which all of the following shall have occurred or been waived, and is conditioned on the occurrence of all of the following events:

(a)    Execution of the Stipulation of Settlement and such other documents as may be required to obtain final Court approval of the Stipulation of Settlement in a form satisfactory to the Parties;

(b)    The Court's entry of a preliminary approval order;

(c)    The deposit of the Settlement Amount into an escrow account, as set forth in ¶3.1 herein;

(d)    Defendants not exercising their option to terminate the Settlement; and

(e)    The Court's entry of a judgment approving the Stipulation of Settlement, and the Judgment has become Final, which is when the last of the following with respect to the judgment approving the Stipulation shall occur: (i) the expiration of the time to file any motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e) without any such motion having been filed; (ii) the expiration of the time to appeal from the judgment without any such appeal having been filed; and (iii) if a motion to alter or amend is filed or if an appeal is filed, immediately after the determination of that motion or appeal so that the judgment is no longer subject to any further judicial review or appeal whatsoever, whether by reason of affirmance by a court of last resort, lapse of time, voluntary dismissal of appeal, or otherwise, and in such a manner as to permit the consummation of the Settlement substantially in accordance with the terms and conditions of the Stipulation. For purposes of this paragraph, an "appeal" shall include any petition for a writ of certiorari or other writ that may be filed in connection with the approval or

disapproval of this Settlement, but shall not include any appeal which concerns only the issue of Co-Lead Counsel's attorneys' fees and expenses, payments to the Lead Plaintiffs for their expenses, the plan of allocation of the Settlement Amount, or the procedures for determining recognized claims by authorized claimants.

## 12. WAIVER OR TERMINATION

12.1    Defendants and Lead Plaintiffs shall have the right to terminate the Settlement and this Stipulation by providing written notice of their election to do so ("Termination Notice"), through counsel, to all other parties hereto within thirty (30) calendar days of: (i) the Court's Final refusal to enter the Preliminary Approval Order in any material respect; (ii) the Court's Final refusal to approve this Stipulation or any material part of it; (iii) the Court's Final refusal to enter the Judgment in any material respect; or (iv) the date upon which the Judgment is modified or reversed in any material respect by a Final order of the Court, the United States Court of Appeals, or the Supreme Court of the United States. Lead Plaintiffs shall not have the right to terminate the Settlement due to any decision, ruling, or order respecting the Fee and Expense Application or any plan of allocation.

12.2    In addition to the foregoing, Defendants shall also have the right to terminate the Settlement in the event the Opt-Out Threshold (defined below) has been reached.

12.3    Simultaneously herewith, Defendants' Counsel and Co-Lead Counsel are executing a Confidential Supplemental Agreement Regarding Requests for Exclusion ("Supplemental Agreement"). The Supplemental Agreement sets forth certain conditions under which Defendants shall have the sole option to terminate the Settlement and render this Stipulation null and void in the event that requests for exclusion from the Settlement Class exceed certain agreed-upon criteria (the "Opt-Out Threshold"). The Parties agree to maintain the confidentiality of the Supplemental Agreement, which shall not be filed with the Court unless a dispute arises as to its terms, or as otherwise ordered by the Court, nor shall the Supplemental Agreement otherwise be disclosed unless ordered by the Court.  If submission of the Supplemental Agreement is required for resolution of a dispute or is otherwise ordered by the Court, the Parties will undertake to have the Supplemental Agreement submitted to the Court *in camera* or filed under seal. Notwithstanding the foregoing, Defendants may include a redacted copy of the Supplemental Agreement with any notice provided pursuant to CAFA.

12.4    The Preliminary Approval Order, attached hereto as Exhibit A, shall provide that requests for exclusion shall be received no later than twenty-one (21) calendar days prior to the Settlement Hearing. Upon receiving any request for exclusion, Co-Lead Counsel shall promptly, and in no event no later than three (3) calendar days after receiving a request for exclusion, notify Defendants' Counsel of such request for exclusion and provide copies of such request for exclusion and any documentation accompanying it by email.

12.5    In addition to all of the rights and remedies that Lead Plaintiffs have under the terms of this Stipulation, Lead Plaintiffs shall also have the right to terminate the Settlement in the event that the Settlement Amount has not been paid in the time period provided for in ¶3.1 above, but only if (i) Co-Lead Counsel has notified Defendants' Counsel in writing of Co-Lead Counsel's intention to terminate the Settlement, and (ii) the entire Settlement Amount is not transferred to the Escrow Account within fourteen (14) calendar days after Co-Lead Counsel has provided such written notice.

12.6    If, before the Settlement becomes Final, any Defendant files for protection under the Bankruptcy Code or any similar law or a trustee, receiver, conservator, or other fiduciary is appointed under bankruptcy, or any similar law, and in the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money or any portion thereof to the Settlement Fund by or on behalf of such Defendant to be a preference, voidable transfer, fraudulent transfer or similar transaction and any portion thereof is required to be returned, and such amount is not promptly deposited into the Settlement Fund by others, then, at the election of Lead Plaintiffs the Parties shall jointly move the Court to vacate and set aside the release given and the Judgment entered in favor of that Defendant and that Defendant and Lead Plaintiffs and the members of the Settlement Class shall be restored to their litigation positions immediately prior to October 23, 2024. All releases and the Judgment as to other Defendants shall remain unaffected.

12.7    The Defendants warrant as to the payments they make pursuant to this Stipulation, that, at the time of such payment, they will not be insolvent, nor will payment render them

33

insolvent, within the meaning of or for the purposes of the United States Bankruptcy Code, including Sections 101 and 547 thereof.

12.8    If an option to withdraw from and terminate this Stipulation and Settlement arises under any of ¶¶12.1–12.6 above: (i) neither Defendants nor Lead Plaintiffs (as the case may be) will be required for any reason or under any circumstance to exercise that option; and (ii) any exercise of that option shall be made in the sole and unfettered discretion of Defendants or Lead Plaintiffs, as applicable.

12.9    With the exception of the provisions of ¶¶12.9–12.10 which shall continue to apply, in the event the Settlement is terminated as set forth herein or cannot become effective for any reason, then the Settlement shall be without prejudice, and none of its terms shall be effective or enforceable except as specifically provided herein; the Parties shall be deemed to have reverted to their respective litigation positions in the Action immediately prior to October 23, 2024; and, except as specifically provided herein, the Parties shall proceed in all respects as if this Stipulation and any related order had not been entered. In such event, this Stipulation, and any aspect of the discussions or negotiations leading to this Stipulation shall not be admissible in this Action, or in any other proceeding, and shall not be used against or to the prejudice of Defendants or against or to the prejudice of Lead Plaintiffs, in any court filing, deposition, at trial, or otherwise. Any judgment or order entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*.

12.10    In the event the Settlement is terminated, as provided herein, or fails to become effective, any portion of the Settlement Amount previously paid into the Escrow Account, together with any earnings thereon, less any Taxes paid or due, less Notice and Administration Expenses actually incurred and paid or payable from the Settlement Fund, shall be returned to the Defendants within fifteen (15) business days after written notification of such event in accordance with instructions provided by Defendants' Counsel to Co-Lead Counsel, along with a detailed accounting of any Taxes and Notice and Administration Expenses paid. The Escrow Agent or its designees shall apply for any tax refund owed on the amounts in the Escrow Account and pay the

proceeds, after any deduction of any fees or expenses incurred in connection with such application(s), of such refund to Defendants or as otherwise directed by Defendants.

## 13. NO ADMISSION

13.1    Except as set forth in ¶13.2 below, this Stipulation, whether or not consummated, and whether or not approved by the Court, and any discussion, negotiation, proceeding, or agreement relating to the Stipulation, the Settlement, and any matter arising in connection with settlement discussions or negotiations, proceedings, or agreements, shall not be offered or received against or to the prejudice of the Parties or their respective counsel, for any purpose other than in an action to enforce the terms hereof, and in particular:

(a)    do not constitute, and shall not be offered or received against or to the prejudice of Defendants as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by Defendants with respect to the truth of any allegation by Lead Plaintiffs and the Settlement Class, or the validity of any claim that has been or could have been asserted in the Action or in any litigation, including but not limited to the Released Claims, or of any liability, damages, negligence, fault or wrongdoing of Defendants or any person or entity whatsoever;

(b)    do not constitute, and shall not be offered or received against or to the prejudice of Defendants as evidence of a presumption, concession, or admission of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by Defendants, or against or to the prejudice of Lead Plaintiffs, or any other member of the Settlement Class as evidence of any infirmity in the claims of Lead Plaintiffs, or the other members of the Settlement Class;

(c)    do not constitute, and shall not be offered or received against or to the prejudice of Defendants, Lead Plaintiffs, any other member of the Settlement Class, or their respective counsel, as evidence of a presumption, concession, or admission with respect to any liability, damages, negligence, fault, infirmity, or wrongdoing, or in any way referred to for any other reason against or to the prejudice of any of the Defendants, Lead Plaintiffs, other members of the Settlement Class, or their respective counsel, in any

other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation;

(d)    do not constitute, and shall not be construed against Defendants, Lead Plaintiffs, or any other member of the Settlement Class, as an admission or concession that the consideration to be given hereunder represents the amount that could be or would have been recovered after trial; and

(e)    do not constitute, and shall not be construed as or received in evidence as an admission, concession, or presumption against Lead Plaintiffs, or any other member of the Settlement Class that any of their claims are without merit or infirm or that damages recoverable under the Complaint would not have exceeded the Settlement Amount.

13.2    Notwithstanding ¶13.1 above, the Parties, and their respective counsel, may file this Stipulation or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, statute of limitations, statute of repose, good-faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim, or to effectuate any liability protection granted them under any applicable insurance policy. The Parties may file this Stipulation or the Judgment in any action that may be brought to enforce the terms of this Stipulation or the Judgment. All Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement.

## 14. MISCELLANEOUS PROVISIONS

14.1    All of the exhibits to the Stipulation, except any Plan of Allocation to the extent incorporated in those exhibits, and the Supplemental Agreement, are material and integral parts hereof and are fully incorporated herein by this reference.

14.2    The Parties intend the Settlement to be the full, final, and complete resolution of all claims asserted or that could have been asserted by the Parties with respect to the Released Claims and Released Defendants' Claims. Accordingly, the Parties agree not to assert in any forum that the Action was brought, prosecuted, or defended in bad faith or without a reasonable

basis. The Parties and their respective counsel agree that each has complied fully with Federal Rule of Civil Procedure 11 in connection with the maintenance, prosecution, defense, and settlement of the Action and shall not make any application for sanctions, pursuant to Rule 11 or other court rule or statute, with respect to any claim or defense in this Action. The Parties agree that the amount paid and the other terms of the Settlement were negotiated at arm's-length and in good faith by the Parties and their respective counsel and reflect a settlement that was reached voluntarily based upon adequate information and after consultation with experienced legal counsel.

14.3    This Stipulation, along with its exhibits and the Supplemental Agreement may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by counsel for the Parties hereto, or their successors, that are materially and adversely affected by the modification, amendment, or waiver.

14.4    The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

14.5    The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders providing for awards of attorneys' fees and any expenses and implementing and enforcing the terms of this Stipulation.

14.6    The waiver by one Party of any breach of this Stipulation by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

14.7    This Stipulation, its exhibits, and the Supplemental Agreement constitute the entire agreement among the Parties concerning the Settlement and supersedes any and all prior agreements, written or oral, between the Parties.  No representations, warranties or inducements have been made concerning this Stipulation or its exhibits other than the representations, warranties and covenants contained and memorialized in such documents.

14.8    Nothing in the Stipulation, or the negotiations relating thereto, is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, attorney-client privilege, joint defense privilege, or work product protection.

14.9    Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of this Stipulation.

14.10    All designations and agreements made, or orders entered during the course of the Action relating to the confidentiality of documents or information shall survive this Stipulation Within 30 days of the final disposition of this Action, all documents produced in this Action and designated as "Confidential," and all copies thereof, shall be promptly returned to the producing person, or, upon permission of the producing person, destroyed.

14.11    This Stipulation may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. Signatures sent by facsimile or via email in pdf format shall be deemed originals.

14.12    This Stipulation shall be binding when signed, but the Settlement shall be effective upon the entry of the Judgment and the payment in full of the Settlement Amount, subject only to the condition that the Effective Date will have occurred.

14.13    This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties.

14.14    The construction, interpretation, operation, effect, and validity of this Stipulation, and all documents necessary to effectuate it, shall be governed by the laws of the State of New York without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.

14.15    This Stipulation shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's-length negotiations among the Parties, and all Parties have contributed substantially and materially to the preparation of this Stipulation.

14.16   All counsel and any other person executing this Stipulation and any of the exhibits hereto, or any related Settlement document, warrant and represent that they have the full authority to do so, and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

14.17   The Parties and their respective counsel agree to cooperate fully with one another in promptly applying for preliminary approval by the Court of the Settlement and for the scheduling of a Settlement Hearing, and to agree promptly upon and execute all such other documentation as reasonably may be required to obtain Final approval by the Court of the Settlement. The Parties and their respective counsel further agree to cooperate in good faith and coordinate regarding the manner in which to present the motions for preliminary and final approval to the Court.

14.18   If any disputes arise out of the finalization of the settlement documentation or the Settlement itself prior to the application for preliminary approval of the Settlement as set forth in ¶9.1 above, those disputes will be resolved by the Mediator first by way of expedited telephonic mediation and, if unsuccessful, then by final, binding, non-appealable resolution by the Mediator.

14.19   Except as otherwise provided herein, the Parties shall bear their own costs.

14.20   Grab may, in its discretion, publicly announce or otherwise disclose the terms of this Settlement. Until such disclosure is made by Grab, the Parties agree that, other than disclosures required by law, there will be no public announcements regarding the Settlement. Once Grab publicly announces the Settlement or its terms are otherwise publicly disclosed, any public comments from the Parties regarding this resolution will not substantially deviate from words to the effect that the Parties have reached a mutually agreeable resolution by way of a mediated settlement, and each Party may characterize the Settlement as favorable. This provision does not affect Plaintiffs' notice requirements under the Private Securities Litigation Reform Act, Federal Rule of Civil Procedure 23(e), or any other applicable legal requirements.

**IN WITNESS WHEREOF**, the Lead Plaintiffs and Defendants have caused this Stipulation to be executed, by their duly authorized attorneys, as of December 30, 2024.

Respectfully Submitted,

Dated:  December 30, 2024

**LEVI & KORSINSKY, LLP**

Shannon L. Hopkins
Gregory M. Potrepka
Morgan M. Embleton (*pro hac vice*)
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel: (203) 992-4523
shopkins@zlk.com
gpotrepka@zlk.com
membleton@zlk.com

*Co-Lead Counsel for Lead Plaintiffs*
*(Settlement Class Counsel, as defined herein)*

Dated:  December 30, 2024

**POMERANTZ LLP**

Joshua B. Silverman
Brian P. O'Connell
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Tel.: (312) 377-1181
Fax: (312) 377-1184
jbsilverman@pomlaw.com
boconnell@pomlaw.com

Jeremy A. Leiberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Tel: (212) 661-1100
Fax: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com

*Co-Lead Counsel for Lead Plaintiffs*
*(Settlement Class Counsel, as defined herein)*

**BRONSTEIN, GEWIRTZ &**
**GROSSMAN, LLC**

Eitan Kimelman

42

60 E 42nd Street, Suite 4600
New York, New York 10165
Tel.: (212) 697-6484
Fax: (212) 697-7296
eitank@bandg.com

*Additional Counsel for Lead Plaintiffs*

Dated: December 30, 2024                    **SKADDEN, ARPS, SLATE,
                                            MEAGHER, & FLOM LLP**

                                            _____
                                            Susan L. Saltzstein
                                            Lara A. Flath
                                            Jeffrey S. Geier
                                            One Manhattan West
                                            New York, New York 10001
                                            Telephone: (212) 735-3000
                                            Fax: (212) 735-2000
                                            susan.saltzstein@skadden.com
                                            lara.flath@skadden.com
                                            jeffrey.geier@skadden.com

                                            *Attorneys for Grab and the Grab Defendants*
                                            *(Defendants' Counsel, as defined herein)*

Dated: December 30, 2024                    **ROPES & GRAY LLP**

                                            _____
                                            David B. Hennes
                                            Amy Jane Longo
                                            1211 Avenue of the Americas
                                            New York, New York 10036
                                            Telephone: (212) 596-9000
                                            Fax: (212) 596-9090
                                            David.Hennes@ropesgray.com
                                            Amy.Longo@ropesgray.com

                                            *Attorneys for the Altimeter Individuals*
                                            *(Defendants' Counsel, as defined herein)*

43